**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION**

**CLEVE GALE**                                                                                 **PLAINTIFF**

**VS.**                                                 **CIVIL ACTION NO: 2:09-cv-00169-MPM-DAS**

**TOWN OF COMO, MISSISSIPPI**                                         **DEFENDANT**

**ORDER**

This cause comes before the court on the motion of defendant Town of Como, Mississippi for summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff Cleve Gale has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion is not well taken and should be denied.

This is a race discrimination case, brought pursuant to 42 U.S.C. § 1981, against Como by its former chief of police, plaintiff Cleve Gale, an African-American. Plaintiff, a long-standing employee of the town, was terminated from his position as police chief in the summer of 2008, under circumstances which can only be described as chaotic. All parties agree that, at the time of plaintiff's firing, Como found itself in a dire fiscal emergency, caused in part by the town's prior failure to pay federal taxes which it owed. It is also clear from the record that Como was in a considerable degree of political turmoil, and plaintiff contends that this turmoil had its origins in racial tensions in the town. Until shortly before plaintiff's termination, Como was governed by Mayor Azria Lewers, an African-American, and its board of aldermen was made up of three black and two white aldermen. In June 2007, following a disputed election that had to be decided by the courts, Forster Ruhl, a

white male, was declared the winner of the at-large seat on the board of aldermen.

The election of Ruhl shifted the racial makeup of the board to three white and two black aldermen, and, one month later, it voted three-to-two, along racial lines, to fire plaintiff and replace him with Joe Barber, a white male. This firing was vetoed by Mayor Lewers, who expressed his view that plaintiff was doing a good job and did not deserve to be fired. Mayor Lewers was himself replaced as mayor in May 2008 by Judy Sumner, a white female, in yet another disputed election which had to be decided by the courts. Plaintiff was terminated once again a few months later in another three-to-two vote along racial lines, and this time the firing "stuck" and was not vetoed. Defendant argues that this second firing was based on complaints from residents and also based on intractable animosity which existed between plaintiff and Hooah Security Services ("HSS"), which had been providing valuable security services to the town free of charge. Defendant argues that it was put in a position of being forced to choose between retaining HSS's free services and retaining plaintiff as police chief and that it chose the former. Plaintiff responds that these reasons are merely pretextual and that his race was the true reason for his termination.

Defendant has presently moved for summary judgment, arguing that no genuine issue of fact exists regarding whether it discriminated against plaintiff on the basis of his race and that it is entitled to judgment as a matter of law. Race discrimination claims under 42 U.S.C. § 1981 are governed by the same well known *McDonnell-Douglas* burden shifting framework applicable to claims of employment discrimination under Title VII. *See LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n. 2 (5th Cir. 1996); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell-Douglas* framework, if a plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *McCoy v. City of*

*Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). If the employer articulates a legitimate nondiscriminatory reason, then "any presumption of discrimination raised by the plaintiff's *prima facie* case vanishes." *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005).

The U. S. Supreme Court clarified in *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 146, 120 S. Ct. 2097, 2106 (2000) that a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, is sufficient to permit the trier of fact to conclude that the employer unlawfully discriminated against the plaintiff. Defendant concedes that plaintiff is able to establish a *prima facie* case of race discrimination in this case, but it argues that it had two legitimate, nondiscriminatory reasons to terminate his employment, to wit:

> (1) that the Board of Aldermen had received numerous complaints about his job performance in the months leading up to his termination (2) an altercation between plaintiff and an HSS officer forced the Board to choose between employing plaintiff and retaining a large number of qualified reserve police officers.

In the court's view, there are significant flaws with regard to defendant's stated non-discriminatory reasons for terminating plaintiff which serve to raise questions as to whether they are merely a pretext for discrimination so as to permit the jury to decide the ultimate issue of discrimination under *Reeves*.

First, a jury may well be skeptical of the fact that defendant's stated reasons for terminating plaintiff are all based on events that occurred in 2008, which was *after* the very same board had already voted to terminate plaintiff in June 2007. Defendant argues that the first firing was a simple cost-cutting measure, and it notes that the newly elected board voted in 2007 to remove both plaintiff and City Attorney Leigh Ann Darby - who is white - from their paid positions and replace them with volunteers. A jury may find defendant's arguments in this regard to be persuasive, but it may also

3

view them with some skepticism. In the court's view, the fact that plaintiff found himself fired shortly after the board of aldermen became majority white in 2007 and once again after a white mayor was elected in 2008 may lead a reasonable jury to question whether race may have at least played a role in his termination.

A jury's suspicions in this regard may well be strengthened by the identities of two of the individuals whose complaints allegedly led the board to terminate plaintiff a second time. With regard to the complaints against plaintiff, defendant writes as follows:

> In May, a resident complained that Plaintiff was working a side job serving summonses while on duty, in uniform, and riding in a police car with another uniformed officer. In June, another resident complained that Plaintiff had failed to handle a crowd of young people who were fighting and cursing in the street near his home. In August, there was a complaint that Plaintiff had been working another side job while on duty, this time laying pipes in a resident's yard. Later in August, Municipal Judge Jeffrey Padgett complained that Plaintiff had appeared during court to suggest that defendants be allowed to work off their city fines as part of a "work program," which Padgett knew did not exist.

Defendant's reference to complaints by "residents" fails to acknowledge that two of those complaints were actually filed by the *wives* of two of the aldermen who had voted to fire plaintiff in 2007.[1]

Statistically speaking, the 66% rate of complaints against plaintiff among the wives of Como's white board members is vastly disproportionate to that among the town's residents as a whole; indeed, defendant does not appear to dispute plaintiff's contention that his file contained *no* complaints regarding his performance prior to 2007. Moreover, a jury may interpret the

---

[1]One of the complaints, referring to the Como Police Department's alleged inability to handle an unruly crowd, was made by an unknown citizen who only provided his or her initials and did not appear to lodge a complaint against plaintiff specifically. Particularly considering the known identity of two of the complaining "residents," this court is inclined to give very limited weight to any complaint lodged by a citizen who refused to give his or her name.

language of the complaints as betraying a pre-existing animus against plaintiff on the part of the wives, and it may harbor legitimate concerns regarding the origins of this animus. Defendant's case is also weakened by the fact that, in an October 2008 filing with the Mississippi Department of Employment Security, Como Municipal Clerk D. Scott Rhines asserted that the town terminated plaintiff "due to poor/no job performance, not complying with standard operating policy." There was no mention in this filing of either the specific complaints filed by the Como residents, nor of the dispute between plaintiff and HSS, and this fact serves to raise additional questions regarding whether these were the genuine bases for the decision to fire plaintiff.

The court hastens to add, however, that a jury may simply choose to accept the town's stated reasons for terminating plaintiff as being the genuine ones, notwithstanding any arguable flaws in its proof on this issue. The fact that a jury *could*, in the court's view, reasonably find the town's stated reasons for firing plaintiff to be pretextual by no means indicates that it is *obliged* to do so. Moreover, a jury might conceivably conclude that defendant's stated reasons for firing plaintiff were not its true reasons for doing so, but that some factor other than race was. Indeed, plaintiff himself initially filed, but later withdrew, a claim for First Amendment retaliation arguing that "the Mayor, and her supporters among the Board of Aldermen, entertained animosity against plaintiff for exercise of First Amendment rights by campaigning for opponents of the current Mayor." Assuming that a jury reaches the same conclusion, then it may well conclude that plaintiff's firing was based on a political vendetta, rather than his race, and therefore decide against him on his race discrimination claims. In summary, the court concludes that this case presents a fairly classic jury issue regarding whether plaintiff was terminated on the basis of his race, and defendant's motion for summary judgment will therefore be denied.

The court now turns to the pending motions *in limine* in this case.

- Defendant's motion *in limine* to bar proof regarding "the circumstances surrounding the Town of Como's 2005 elections including, but not limited to, whom Plaintiff supported and subsequent related civil and criminal lawsuits" will be denied. In seeking to exclude evidence on this point, defendant writes that:

> These references to the 2005 election and its legal aftermath ostensibly were relevant to Plaintiff's claim that his termination was in retaliation for protected political expression, in violation of the First Amendment. They were rendered irrelevant and inadmissible when Plaintiff, in his summary judgment response memorandum, expressly abandoned his First Amendment claim.

The court is somewhat surprised that defendant is raising this motion, since, as noted previously, proof that plaintiff may have been fired based on a political vendetta might conceivably lead a jury to decide *against* plaintiff on his race discrimination claims. Regardless, the upcoming trial is a search for the truth, and the court does not intend to prohibit proof which might be probative regarding defendant's motivations for firing plaintiff, regardless of what those motivations might have been. As always, the court will closely monitor the proof at trial on this point to ensure that it does not venture into irrelevant or unduly prejudicial testimony, but defendant's motion *in limine* to exclude all proof on this issue is denied.

- Defendant's motion *in limine* seeking to bar "evidence concerning alleged statements by Aldermen Everette Hill or Ruby Higgenbottom concerning the reasons for plaintiff's termination" will be granted at this juncture, although the court may elect to admit this evidence at trial if a proper evidentiary foundation is laid. Defendant notes that plaintiff testified in his deposition that the town's two black aldermen—Aldermen Hill and Higgenbottom— told him that, in their opinion, the Board voted to fire him because he is black. In seeking to exclude this

evidence, defendant writes as follows:

> The alleged statements by Hill and Higgenbottom are hearsay, and thus inadmissible under Rule 802 of the Federal Rules of Evidence. Plaintiff's only possible counterargument is a passing, conclusory assertion in his summary judgment response memorandum that the alleged statements are admissions by a party opponent. This is wrong for multiple reasons. ... In addition, even if the alleged statements by Hill and Higgenbottom were not hearsay, they are pure speculation, and thus insufficient to support a race discrimination claim.

This court agrees with plaintiff that the statements by the two aldermen constitute non-hearsay admissions by a party opponent. Plaintiff was fired by the Town of Como based upon a vote by its board of aldermen, and Hill and Higgenbottom were members of that board. It is difficult to discern how members of the Como board of aldermen can be legally separated from the town itself when they had the legal power to act on its behalf and actually did so regarding the termination which is at issue in this case.

The court does have concerns, however, regarding the ability of a witness to testify regarding the motivations of another person, and it will be incumbent upon plaintiff at trial to establish a foundation in this regard. A non-expert witness is only entitled to testify as to matters regarding which he has personal knowledge, and one human being is generally not privy to the inner thoughts and motivations of another. Accordingly, it will be incumbent upon plaintiff at trial to establish to this court's satisfaction - outside the presence of the jury - that these witnesses have some concrete factual basis for testifying that the white aldermen voted to fire plaintiff because he was black. If this court concludes that these witnesses are merely seeking to offer rank speculation in this regard, then it will not permit plaintiff to offer their testimony - nor testimony regarding their out-of-court statements - at trial. Defendant's motion *in limine* will therefore be granted at this juncture, but the court does not rule out the possibility that plaintiff

7

will be able to convince the court to admit this evidence at trial.

- Defendant's motion *in limine* to "prohibit evidence concerning the placement of roadblocks by Hooah Security, Inc., or any alleged community reaction to the same" will be denied at this juncture, although plaintiff will likely be given only limited leeway to inquire into this topic at trial. In seeking to exclude this evidence, defendant writes that:

> In his summary judgment response memorandum, Plaintiff makes reference to the private security firm retained by the town, Hooah Security. He contends that Hooah was "only setting up roadblocks in the black neighborhoods, not the white neighborhoods," and that this "was creating racial tensions in the black community." Evidence concerning the roadblocks, their location, or any alleged tension created by the presence of Hooah Security are irrelevant to Plaintiff's race discrimination claim under Section 1981 and should be excluded at trial. . . Further, there is no evidence that placement of roadblocks in so-called "black neighborhoods" was motivated by racial animus, as opposed to a desire to establish a presence in areas where crime historically was more frequent.

In response, plaintiff argues as follows:

> Hooah was hired by Mayor Sumner to usurp the authority of police chief Gale. Gale was objecting to the racial profiling of blacks in the community. The head of Hooah Security threatened to have Gale fired, and told Mayor Sumner that if she did not fire Gale he was not coming back. A few days later, Gale was fired. As with every move by the white majority board and the white mayor, there were racial implications. You cannot separate the actions of Hooah from the actions of the white mayor and white board. If this Court excluded the evidence of the actions of Hooah Security, Plaintiff would be severely prejudiced and the jury would not be able to hear the reason that Defendant claimed it fired Plaintiff. The jury is entitled to know the entire story about Hooah, its racial profiling, and the fact that it did not report to the police chief. Without that, the facts of Gale's termination will not make sense.

For its part, the court sees no reason why HSS should be considered immune from accusations of racial bias in this case, since defendant itself asserts that HSS's role in the town's law enforcement was so crucial that the board chose to fire plaintiff rather than risk losing its services. In the court's view, defendant may not validly seek to elevate HSS to a central figure in

this case and thereafter prohibit inquiry into its role in local law enforcement and any motivation or agenda it might have had.

The court will, however, give defendant ample opportunity at trial to offer its own proof on this issue. For example, defendant argues in its reply brief that:

> However, Plaintiff has no evidence to support this assertion. The plain fact is that many of the Hooah officers were themselves black, and the roadblocks were placed in areas of the town that historically had high crime rates. Plaintiff has ***absolutely no factual evidence*** that racism motivated the placement of the roadblocks.

In the court's view, defendant is entirely capable of presenting its version of events to the jury, which is not, in the court's view, so sensitive that allegations of racial bias in a case based on allegations of racial bias will unduly prejudice it. Plaintiff appears to have a very sincere belief that HSS acted as a proxy for white Como officials who harbored racial animus against blacks, and it is entitled to present its theory of the case to a jury. This court's role is not to prejudge before trial exactly what the evidence will or will not show; rather, it is the jury's role to evaluate each party's evidence at trial and decide which is more persuasive. The court does see a risk, however, that plaintiff could belabor this point, and it will therefore closely monitor the proof on this issue at trial to ensure that it does not veer into irrelevant or unduly prejudicial testimony. In particular, plaintiff will be given only limited leeway to inquire into the question of roadblocks being placed in black neighborhoods, but the court sees no reason to bar this evidence outright. With this caveat, defendant's motion *in limine* will be denied.

In light of the foregoing, it is ordered that defendant's motion for summary judgment is denied. Defendant's motions *in limine* regarding the 2005 elections and the actions of HSS [43-1, 45-1] are denied, but defendant's motion [44-1] regarding the statements of Hill and

Higgenbottom is granted at this juncture. Plaintiff's motions to strike [52-1, 53-1, 54-1] are denied.

      SO ORDERED, this the 28th day of September, 2011.

                              **/s/ MICHAEL P. MILLS**
                              **CHIEF JUDGE**
                              **UNITED STATES DISTRICT COURT**
                              **NORTHERN DISTRICT OF MISSISSIPPI**